SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JOSEPH H. HUYNH, DC #495403**
Assistant United States Attorney
Joseph.Huynh@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:26-cr-00109-MTK** |
| **v.** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE AND REQUEST FOR RECIPROCAL DISCOVERY** |
| **RYAN BRUCE GAITHER JR.,** | |
| **Defendant.** | |

Defendant was indicted for assault on two officers at the federal building, spitting on one and then, after running from law enforcement and tripping and falling, biting another during his arrest, hard enough to leave marks on his arm and puncture his skin. The Government has made multiple productions including body cam building surveillance footage, body cam footage of his spitting and arrest, and agent reports including statements made by Defendant. It also provided a plea offer that appears to be rejected, with this matter now set for trial the week of February 22, 2027. Defendant has filed a Motion to Compel accordingly. The Government response follows.

/ / /

/ / /

## I. Factual Background

On January 27, 2026, at the Eugne Federal Building (EFB) law enforcement was arresting on an unrelated individual based on prior incidences with that person. At approximately 2:43 p.m., Federal Protective Service Officers entered the west plaza and effectuated his arrest. Protestors around the security team became aggressive, by screaming and closing the distance on officers and screaming aggressive or derogatory comments at the officers.

The Special Response Team (SRT) entered the plaza to form a protective barricade around the FPS officers who had effected the arrest. As multiple officers provided loud verbal commands of "GET BACK!" to the protestors, the Defendant, holding a long board (skateboard) like a shield, approached the immediate area of the SRT Officers.

Defendant repeatedly yelled something to the effect of: "YOU FUCKING PIGS!!" and something to the effect of "SQUARE UP TO ME!!!" Defendant continued to move closer and got within a few feet of the security line when Defendant visibly gathered spit in his mouth and in a very overt move, spit a large, very white glob of spit at the SRT Officer, AV1, as indicated below. The spit landed on AV1's arm.






/ / /

Defendant then ran west from the plaza towards the bollards and Pearl Street as two SRT Officers pursued him. Defendant tried to run over the retaining wall and grassy area on the west side of the federal building, jump down, and stumbled down into middle of Pearl Street.

At this time the SRT Officers caught up to Defendant and placed him under arrest. During his apprehension, Defendant moved his head towards the arm of the SRT Officer, AV2, and bit him on the lower bicep. Defendant felt a sharp pain at that time and a half-moon crescent shape and broken skin are apparent based on photographs taken soon after the arrest as indicated below.



Defendant was secured and brought into the federal building for processing. At approximately 2:57 p.m., the Defendant was processed into the detention cell on the first floor. Defendant was Mirandized by the FPS Officer during booking. Defendant was asked if he knew why he was under arrest. Defendant responded with "because I was protesting." Defendant was told he was under arrest for assaulting a federal officer. Defendant stated he "did not assault anyone." When confronted with the facts, Defendant stated he was not going to talk anymore and questioning stopped.

A Special Agent on the scene conducted another interview with Defendant at approximately 3:00 p.m. Defendant was Mirandized again and agreed to speak. Defendant stated he received a notification through an application on his cell phone there was a need for protestors to assemble because a couple of people had been arrested. Defendant immediately began talking about history and the Holocaust, comparing our country today to the Holocaust. Defendant stated he lives "just around the corner" and he is currently struggling to pay his rent, so his girlfriend is planning on moving in with him to share expenses. Defendant stated his girlfriend was going to be mad at him for getting arrested and for not answering her phone calls. Defendant stated he just had some phlegm in his throat and needed to clear his throat and that the "video is going to show you what you think you see." Defendant also stated he did not intend to bite the officer but claimed that the officer's arm was around his face and he was biting to try to talk at the same time. Defendant made a motion of biting with his teeth to recreate the incident.

## II. DISCUSSION

As a general matter, there is no constitutional right to pretrial discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Nor is a criminal defendant entitled to rummage indiscriminately through the government's entire criminal case file. *United States v. Bagley*, 473 U.S. 667, 675 (1985); accord *United States v. Agurs*, 427 U.S. 97, 106 (1976) ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor"). Pretrial discovery is governed by Rule 16, the Jencks Act, Brady, and its progeny.

Rule 16(a)(1)(E)(i) says that items "material to prepare the defense" are subject to disclosure. In the Ninth Circuit, the <u>defendant</u> bears the burden of making a "threshold showing

of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense," and the item is material to the case a defense intends to present at trial. *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010); see *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016).

Rule 16(a) "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Rule 16(a)(1)(E) provides that a criminal defendant is entitled to discovery of documents and tangible things that are within the government's possession, custody, or control if the requested information is "material to preparing the defense." Documents and tangible things are in the government's possession if the prosecutor "has knowledge of and access to the documents sought by the defendant." *Stever*, 603 F.3d at 752 (quoting *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995)). To obtain discovery under Rule 16(a)(1)(E) (formerly Rule 16(a)(1)(c)), the defendant must make a prima facie showing of materiality. *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984); *Stever*, 603 F.3d at 752. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). Rather, the defendant must present "case-specific facts" which would tend to show that the government is in possession of information helpful to the defense. *Santiago*, 46 F.3d at 894-95.

Under Rule 16, the court may, for good cause, deny, restrict, or defer discovery. Further, the court may impose reasonable limitations on discovery, or on the uses to which it is put. See, e.g., *United States v. Fisher*, 137 F.3d 1158, 1165 (9th Cir. 1998) (the district court properly

limited discovery to an examination of documents without making copies, where the court found the defendant posed a threat to cooperating witnesses and expressed concern that the defendant might use information in the documents to retaliate against them); *United States v. Dukes*, 139 F.3d 469, 476-77 (5th Cir. 1998) (re-test of controlled substance by the defendant could be conditioned on compliance with DEA procedural requirements).

Defendant's motion seeks specific and broad categories of discovery. The Government responds to each request accordingly.

**A. <u>Response to Defendant's Specific Discovery Requests</u>**

1. <u>All Federal Protective Service CCTV footage captured January 27, 2026, from every available camera angle</u>

The Government has collected and provided 9 angles of CCTV footage (Gaither_0000029-37) that captured the crimes charged. The CCTV videos provided show a minimum of 3 minutes and 23 seconds of relevant footage, capturing a majority of the encounter and all that is known to be in the Government's possession. The only other CCTV footage saved by FPS of that day is of limited footage from other incidents unrelated to Gaither and these charges. Thus, the Government has provided the relevant CCTV footage and believes a request any other surveillance footage of other incidences that day not related to the Defendant's charges frame is overbroad and irrelevant.

2. <u>All body-camera footage of arresting, investigating, and/or interrogating officers, including AV2</u>

The Government provided body-camera footage of AV1 (Gaither_0000056) that captures the spitting and arrest of Defendant in which the bite occurs. The body-camera footage is a 10 minute and 7 seconds clip that captures the Defndant spitting towards AV1 and being chased and

apprehended by AV2 during defendant bit the arm of the agent. It also shows events before and after these incidents, including agents leaving the building to provide support the unrelated FPS arrest and after the incident as the defendant was brought into the building for processing. Defense has requested the body camera footage of AV2 but has been informed that it does not exist. The Government provided discovery that confirms that at Gaither _0000105-107. The Government has provided an additional six body camera videos from other SRT officers present during Defendant's incidences as Gaither_0000073-76 and 102. The Government believes any general request for body camera footage beyond this scope is overbroad and irrelevant.

3. All manuals addressing the usage of body-worn cameras that applied to Federal Protective Service and U.S. Customs and Border Protection Special Response Team

The Government has collected the relevant CBP manual and is reviewing and processing it for discovery. FPS Officers do not wear body worn cameras.

4. Results of open source and social media search of Gaither, referenced at Bates 47

The Government has provided this as Gaither_000097-101.

5. Medical records documenting AV2's follow-up medical visit

The Government has provided the report of Defendant's medical visit (Gaither__0000038-42), which includes FPS's report and urgent care's report of medical records. The Government has informed Defense that there was no follow-up visit conducted and, thus, no report to provide.

/ / /

/ / /

/ / /

6. Native copies of all photos taken of Gaither and AV2

The Government has provided photos taken of Gaither and AV2 (Gaither__0000014-23) that were converted to jpeg files as part of discovery processing. It has reproduced these files as native copies as Gaither_ 000057-67.

**B. Response to Defendant's General Discovery Requests**

Defendant moves for the production of discovery under Fed. R. Crim. P. 12(b)(4), 16. Many of Defendant's requests have already been produced and the Government will continue to comply with its discovery obligations.

A. Production of Native Files and Associated Metadata

As indicated above, the Government has provided photos that were converted to jpeg files as part of processing and provided native copies of those files as well.

B. Defendant's Statements

The United States recognizes its obligation, under Federal Rule of Criminal Procedure 16(a)(1)(A) and (B), to provide to Defendant the substance of his oral and written statements. The Government has provided Defendant's statements in various reports (Gaither_000003-4, 5-6, 8-13, 26, 49-50 and 52) as well as body camera footage that captured his statements during the offense. It is not aware of any additional statements but will provide them as appropriate.

C. Personnel Records of Government Officers and Government Review of Law Enforcement Personnel Files

The United States will comply with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the

appropriate standard of materiality. *United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002) (citing *United States v. Jennings*, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant United States Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in-camera inspection and review. However, the Government objects to Defendant's request to produce the personnel files.

The Government objects to the extent Defendant's request includes personnel files. If the undersigned Assistant United States Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in-camera inspection and review.

D. Arrest Reports, Notes, Dispatch Tapes, and Radio Traffic

The Government has provided numerous arrest reports and items related to Defendant's arrest (Gaither__000008-13, 49-50, and 52). The Government provided dispatch related documents at Gaither_000068-71. The Government will seek to obtain any additional materials relevant to this request and provide it accordingly.

To the extent Defendant seeks rough notes, the United States has no objection to the preservation of the agents' handwritten notes. *See United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. *United States v.*

*Spencer*, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not *Brady* material because, as further discussed, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If specific rough notes become particularly relevant in the future, those notes will be made available to Defendant. The Government has also produced TECS records in this matter.

E. *Brady* Material

It is well-established that the government must disclose evidence which is both favorable to the defendant and material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* material includes impeachment evidence as well as exculpatory evidence. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). Thus, the government must disclose evidence adversely affecting the credibility of key government witnesses. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). *Brady*, however, does not require the disclosure of "everything known by the prosecutor." *Agurs*, 427 U.S. at 106.

Further, the mere possibility that an item of information might help the defense or might affect the outcome of the trial "does not establish 'materiality' in the constitutional sense." *Id.* at 109-110. Rather, evidence is material only if "its suppression undermines confidence in the outcome of the trial," *Bagley*, 473 U.S. at 678, or if the information "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Agurs*, 427 U.S. at 108; *Bagley*, 473 U.S. at 675. "[M]ere speculation" about the contents of the files is not sufficient to give the defense access to the government's files under *Brady*. *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986). Moreover, *Brady* does not require the government "to gather information

or conduct an investigation on the defendant's behalf." *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002).

*Brady* requires disclosure only of items under the control of the government. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985). When defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government. *United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985) (citing *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir.1983)).

The Government understands its *Brady* obligation and has and will continue to abide by that obligation.

F. Defendant's Prior Record

The Government has already provided Defendant's prior criminal record (Gaither__00000929 and 43). It produced an additional NCIC as Gaither_0000103-104. If the United States becomes aware of a prior record of Defendant that has not previously been disclosed, the Government will provide reasonable written notice of its intent to use convictions for purposes of impeachment as required by Federal Rule of Evidence 609(b).

G. Other-Act or Prior-Act Evidence

The Government will provide notice and disclose in advance of trial the general nature of any "crimes, wrongs or other acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). However, evidence should not be treated as "other act" evidence under Federal Rule of Evidence 404(b) when the evidence concerning the other crimes, wrongs or acts is

"inextricably intertwined" with the evidence concerning the crime charged. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).

At this time, the Government does not anticipate introducing any other-act evidence under Fed. R. Evid. 404(b). However, if Government discovers other-act evidence, it will provide the Defendant timely notice under Rule 404(b).

H. TECS or Similar Governmental Database Reports

The Government has already provided Defendant the relevant Governmental Database Reports (Gaither_0000047), including reports from the National Data Exchange (NDEX) database, Law Enforcement Information Management System, and multiple other databases. It does not understand the request for TECS records as TECS is the principal system used by officers at the border to assist with screening and determinations regarding admissibility of arriving persons, which is not relevant to an assault on a federal officer in Eugene, Oregon, case. If there is any other relevant database information, the Government will provide it.

I. Evidence seized and Tangible Objects

The Government has provided defense with copies of any evidence seized. It will allow viewing of any evidence at a time convenient to the parties to include the type of jacket worn by AV2 during the offense.

J. Evidence of Criminal Investigation of Any Government Witness

The Government will comply with its obligations under *Henthorn* and *Brady*.

K. Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, is incorporated into the Federal Rules of Criminal Procedure via Rule 26.2. The Jencks Act requires that, after a government witness has testified

on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in the United States' possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). For purposes of the Jencks Act, a "statement" is: (1) a written statement made by the witness and signed or otherwise adopted or approved by his, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. *United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing *Goldberg v. United States*, 425 U.S. 94, 98 (1976)).

If the case proceeds to trial, the Government will produce any additional materials covered by the Jencks Act relevant to the testifying witness or witnesses in advance of trial.

L. <u>Expert Summaries and Reports of Scientific Tests or Examinations</u>

The Government will comply with its obligation under Rule 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 704 to provide a written summary of any expert testimony in advance of trial consistent with the Court's scheduling order. The Government has provided the medical report of AV2 as (Gaither_0000038-42).

M. <u>Witness List</u>

The Government will work to appropriately provide Defendant with its witness list for the trial consistent with the scheduling order from the Court in this case but notes there is no constitutional or statutory right to disclose witness list before trial in non-capital proceedings. See *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008); 18 U.S.C. § 3432.

N. Omnibus Residual Request

The Government has been and will continue to comply with its discovery obligations. To the extent that any request is not addressed specifically, the Government explicitly opposes that request as outside the bounds of the discovery under the statutory and constitutional discovery obligations.

**C. Motion to Preserve Dispatch Tapes and Other Physical Evidence; Agencies and Individuals to Preserve Evidence. Material or Percipient Witnesses**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489; see also *Cooper v. Calderon*, 255 F.3d 1104, 1113-14 (9th Cir. 2001). There is no rule requiring all evidence to be preserved for all time, especially when all parties have had the opportunity to inspect and copy all the documents and records. Given the ongoing efforts by the United States Attorney's Office to preserve the evidence in this case and Defendant's access to those records, any failure to gather and preserve evidence would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See *Illinois v. Fisher*, 540 U.S. 1174 (2004) (per curiam); *Arizona v. Youngblood*, 488 U.S. 51, 57 58 (1988); *United States v. Rivera-Relle*, 322 F.3d 670 (9th Cir. 2003); *Downs v. Hoyt*, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

The Government directed the relevant individuals to preserve evidence accordingly.

/ / /

/ / /

**GOVENREMENT'S REQUEST FOR RECIPROCAL DISCOVERY**

The discovery provided in this case includes documents and objects which are discoverable under Rule 16(a)(l)(E). Defendant has requested the production of this evidence. Consequently, the Government is entitled to discover from Defendant any videos, books, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items, that are in Defendant's possession, custody, or control and which Defendant intends to use in Defendant's case in chief. *See* Fed. R. Crim. P. 16(b)(1)(A).

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intends to introduce as evidence in chief at the trial, or which were prepared by a person whom Defendant intends to call as a witness. Because the Government will comply with Defendant's requests for delivery of reports of examinations, the Government is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The Government also requests a written summary of the names, anticipated testimony, and bases for opinions of experts Defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

Specifically, the United States of America requests that Defendant in the above-captioned case make the following materials available for inspection Under Federal Rule of Criminal Procedure 16(b),

1. All books, papers, documents, data, photographs, tangible objects, or copies or portions thereof, which are in Defendant's possession, custody, or control, and which Defendant intends to use during defendant's case-in-chief at trial. Fed. R. Crim. P. 16(b)(1)(A).

2. All results or reports of physical or mental examinations or scientific tests or experiments made in connection with this case, which are within Defendant's possession, custody, or control, and which Defendant intends to introduce as evidence in Defendant's case-in-chief at trial. Fed R. Crim. P. 16(b)(1)(B)(i).

3. All results or reports of physical or mental examinations or scientific tests or experiments made in connection with this case which were prepared by a witness who Defendant intends to call at trial, insofar as the results or reports relate to the witness' testimony. Fed. R. Crim. P. 16(b)(1)(B)(ii).

4. Written summaries of any expert testimony Defendant intends to introduce at trial, which should include a complete statement of all opinions Defendant will elicit from each expert; the bases and reasons for each opinion; each expert's qualifications, including a list of all publications authored in the previous ten years; and a list of all other cases in which the witness has testified as an expert at trial or in a deposition during the last four years. Fed. R. Crim. P. 16(b)(1)(C)(iii).

5. All statements (as defined in Fed. R. Crim. P. 26.2(f)) of any defense witness, however recorded, which relate to the subject matter of the witness's testimony. Fed. R. Crim. P. 26.2. Under Fed. R. Crim. P. 16(c), this is a continuing request for discovery. Therefore, if after producing the materials described herein Defendant discovers any additional such material, Defendant should promptly notify the Government of its existence and provide the government with the opportunity to inspect and copy it.

The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the discovery to which it is

entitled. Rule 26.2 requires the production of prior statements of all witnesses, expect Defendant's statements. The Rule thus provides for the reciprocal production of Jencks statements. The time frame established by the Rule requires the statement to be provided after the witness has testified, as in the Jencks Act. Therefore, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including, but not limited to, tape recordings, handwritten or typed notes, or reports.

Dated: October 8, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Joseph H. Huynh*
JOSEPH H. HUYNH
Assistant United States Attorney